[Civ. No. 4204. Fourth Dist. Sept. 27, 1950.]

THE UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation), Respondent, v. JUSTICE COURT OF VISTA TOWNSHIP, etc., et al., Appellants.

, James Don Keller, District Attorney, and Duane J. Carnes, Deputy District Attorney, for Appellants.

Louis Elowitt for Respondent.

MUSSELL, J.—On June 27, 1947, one Cyrus L. Morris was convicted in the Justice Court of Vista Township, county of San Diego, of a violation of Vehicle Code, section 502. Morris was at liberty under a bail bond issued by the United States Fidelity and Guaranty Company, which bond contained the following language:

"Now, we, United States Fidelity and Guaranty Company, a Maryland corporation, hereby undertake that the above named defendant, Cyrus L. Morris, will appear and answer the charge above mentioned in whatever court it may be prosecuted and will at all times hold himself amenable to the orders and process of the court, and if convicted, will appear for judgment and render himself in execution thereof; or, if the said defendant fails to perform either of these conditions, that we will pay to the people of the State of California the sum of Two Hundred Fifty Dollars lawful money of the United States. If the forfeiture of this bond be ordered by the court, judgment may be summarily made and entered forthwith against the United States Fidelity and Guaranty Company, a Maryland corporation, and the said defendant if he be a party to the bond, for the amount of their respective undertakings herein as provided by Section 1305 and 1306 of the Penal Code."

After conviction, Morris waived time and sentence was imposed that he pay a fine of $250 or serve 90 days in jail. Morris then requested, and the court granted, 10 days' time to pay. The fine was not paid within the 10-day period and Morris failed to appear and surrender himself in execution of the judgment.

On July 11, 1949, the bail bond was declared forfeited and on October 11, 1949, a summary judgment of forfeiture was made and entered and a bench warrant was issued at the request of the bonding company. However, the defendant Morris was not thereafter apprehended.

The bonding company filed a petition in the superior court in San Diego, praying that a writ of certiorari be issued to the respondent justice of the peace commanding him to certify and return to the court the proceedings had against the defendant Morris in order that the same might be reviewed.

The writ was issued and after hearing thereon, the trial court concluded that the surety bond was exonerated by operation of law on the 27th day of June, 1949, the day sentence was imposed upon Cyrus L. Morris. Judgment was entered accordingly and this appeal followed.

The principal question presented is whether the trial court was correct in its conclusion that the bond was exonerated under the facts related, which facts are not questioned. The question must be answered in the negative.

When the justice court granted Morris 10 days within which to pay the fine, it thereby stayed the execution of the judgment for that period and Morris was not required to surrender himself in execution of the judgment until that time had expired.

The bond, by its plain language, provides that the defendant will appear for judgment and render himself in execution thereof. He appeared for judgment and at his request the time when he should again appear for the purpose of surrendering himself in execution thereof was fixed. He failed to comply with the condition of the bond that he render himself in execution of the judgment. The petitioner herein, as surety, was liable for his appearance in accordance with the terms of the bond. (*County of Los Angeles* v. *Maga,* 97 Cal. App. 688, 690 [276 P. 352].)

The question of the liability of a surety on its bail bond, where pronouncement of sentence was continued at the defendant's request for a period of 40 days, was before this court in *General Casualty Co.* v. *Justice's Court,* 41 Cal.App. 2d 784 [107 P.2d 663]. In that case several authorities were discussed bearing upon the question involved, among them being *Commonwealth* v. *Turpin,* 98 Ky. 9 [32 S.W. 133]; *State* v. *Blum,* 57 N.D. 619 [223 N.W. 697]; *State* v. *Helgerson,* 59 S.D. 516 [241 N.W. 325], and *In re Howard,* 72 Cal. App. 374 [237 P. 406].

It was held in the *Commonwealth* v. *Turpin* case, *supra,* where, in a prosecution for a misdemeanor, the court permitted the defendant to go to his home for the purpose of making arrangements to pay his fine, that the surety was liable upon his disappearance without its payment. The bond in that case, as here, contained the condition that the defendant, if convicted, should render himself in execution of the judgment.

In *State* v. *Blum, supra,* the undertaking of bail was condi-

tioned that the defendant would appear for judgment and render himself in execution thereof and after plea of guilty, and the passing of sentence upon him, the defendant escaped from the courtroom and failed to surrender himself to the sheriff in execution of the judgment. The court held that the sureties on the undertaking of bail were liable because of the defendant's failure to comply with the order of the court.

In *State* v. *Helgerson, supra,* the defendant was on bail. Judgment was entered against him on November 23, 1929, he being present in court at the time. The court then ordered the commitment to be stayed until December 14, 1929. The defendant did not appear at the conclusion of the stay and his bond was declared forfeited. The court said, at page 326 [241 N.W.]:

"After sentence, without express order to the contrary, there is an implied legal change of custody from the bail to the law, especially where the bond contains no condition requiring the defendant to abide the final judgment, or, if convicted, to render himself in execution of the judgment. 20 A.L.R. 629, note; 6 C.J. 1032; *Detroit Fidelity & Surety Co.* v. *United States* (C.C.A.) 36 F.2d 682, 683. But here the bond contained the condition that the principal therein should "render himself in execution of the judgment." Furthermore, the very part of the judgment which respondents claim freed them from liability on their bond, negatives any implication of change of custody from the bail to the law. As stated by the Court of Appeals in *Detroit Fidelity & Surety Co.* v. *United States, supra*: 'Nothing in the judgment, either expressly or by implication, changed the right of the surety to arrest and deliver its principal as authorized by law.' The bondsmen in the case at bar had less cause to be released from their liability than the bondsmen in the case last cited, because the language of the present bond was more comprehensive, and there was nothing whatever to prevent respondents from arresting their principal and surrendering him to the law."

In *In re Howard, supra,* the defendant pleaded guilty to a misdemeanor charge on May 13, 1924, and was sentenced to imprisonment in the county jail for the term of 180 days. At the same time, the court made this order "execution suspended for three days." At that time the defendant was in fact allowed his leave without any order of court to that effect, other than a supposed implication from the suspension of execution. On February 17, 1925, the defendant was ar-

rested and imprisoned in the city jail to begin service of said sentence. The commitment bore the date of May 13, 1924. It was contended that the imprisonment was illegal because the defendant was allowed to remain at liberty throughout the maximum term of his sentence and during that period of time there was no revocation of the suspension of execution and no authority thereafter existed to imprison him in satisfaction of such judgment. The court, in discussing the effect of the three-day suspension of execution, held that an order of suspension of execution for such a brief period as three days should not be presumed to be an attempted exercise of authority under the probation law, and said, at pages 378, 379:

"Common sense indicates that none of the purposes of probation would be advanced by an unexplained three-day order of this kind. We think that in such an order, thus briefly limited as to time, there should be something further on the face of the order to indicate that it was in an exercise of authority under the probation law, before it can be construed as of that character. . . .".

It seems well settled that since the enactment of Penal Code, section 1203, the court has no power to suspend execution of sentence except as an incident to granting probation (*People* v. *Sidwell*, 27 Cal.2d 121 [162 P.2d 913]; *People* v. *Williams*, 93 Cal.App.2d 777, 779 [209 P.2d 949]), and that an order suspending sentence is, in legal effect, "the equivalent of an order granting probation." (*In re Herron*, 217 Cal. 400, 404 [19 P.2d 4].)

It has also been held that "Probation is not a judgment," (*People* v. *Williams*, *supra*, p. 779) and that where the rendition of the judgment and imposition of sentence is suspended and a defendant granted probation, no final judgment has been entered and no appeal lies from the "judgment." (*People* v. *Guerrero*, 22 Cal.2d 183, 184 [137 P.2d 21].)

In *In re Phillips*, 17 Cal.2d 55, 58 [109 P.2d 344, 132 A.L.R. 644], the court, in discussing the power of the trial court to grant probation after conviction, used the following language:

"The power of the trial court to grant probation after a conviction may be exercised in either of two ways: the court may suspend the imposition of the sentence, in which case no judgment of conviction is rendered, or it may impose the sentence and thereafter suspend its execution. (Pen. Code, secs. 1203.1, 1203.2.) In the latter case a judgment of con-

viction has been rendered from which an appeal can be taken, and upon affirmance, it becomes a final judgment. In the former situation, however, where the court suspends the imposition of the sentence, that is, the rendition of a judgment of conviction, there is no judgment from which the defendant can prosecute an appeal (*People* v. *Von Eckartsberg,* 133 Cal.App. 1, 3 [23 P.2d 819]; *People* v. *Noone,* 132 Cal.App. 89, 92 [22 P.2d 284]; *People* v. *DeVoe,* 123 Cal.App. 233, 236 [11 P.2d 26]; 8 Cal.Jur. 493), and thus there can be no final judgment of conviction.''

In the instant case, as in the Howard case, *supra,* there was nothing on the face of the order of the justice court to indicate that it was intended as an exercise of authority under the probation law. No change of custody of the defendant was contemplated by the court or the defendant. No reference of the case was made to the probation officer, and if such a reference had been made, it would not have had the effect of placing the defendant in custody of such officer. (*In re Giannini,* 18 Cal.App. 166, 169 [122 P. 831].) The court, in effect, pronounced judgment that the defendant pay a fine of $250 within 10 days or serve 90 days in jail. In this connection it should be noted that the bonding company had the right to surrender the defendant at any time if it so desired and that no proceedings were had at the time of pronouncement of judgment indicating that the surety desired to be relieved from its obligation under the bond.

According to the plain terms of the order, the defendant was required to render himself in execution of the judgment if the fine imposed was not paid within 10 days from the time of the entry of the judgment. The order was valid whether it be considered as a granting of probation or not. Since the bond provided that the defendant would at all times hold himself amenable to the orders and process of the court, and render himself in execution of the judgment, the bonding company was obligated until a compliance with the judgment.

As is said in 8 Corpus Juris Secundum, section 79, subdivision g, page 158: ''Sureties on a bond conditioned that the principal shall abide the judgment of the court, or that he will appear for judgment and render himself in execution thereof, are not discharged by a conviction and pronouncement of sentence, and the principal must further submit to such punishment as shall be adjudged.''

It is argued that the bail bond was exonerated upon pronouncement of judgment by the court where the defendant

was present in court for that purpose, and as authority for this contention, two cases are cited: *Rodman* v. *Superior Court*, 13 Cal.2d 262 [89 P.2d 109], and *People* v. *Fidelity & Deposit Co.*, 107 Cal.App. 160 [290 P. 59]. In the *Rodman* v. *Superior Court* case the defendant, after his conviction, was before the court for the pronouncement of judgment and a motion for exoneration of bail was made. The question of the disposition of cash bail was the only problem considered. The question as to whether after sentence and prior to execution thereof the bail remained in force was not directly passed upon. The court pointed out that a bail has a right to surrender the defendant in exoneration thereof and that this was, in effect, done; that where cash bail has been deposited in a criminal case, not by the defendant but by a third party, the third party is entitled to the return of his money upon application therefor when the defendant has, in effect, surrendered himself by appearing in court for the pronouncement of judgment. The Fidelity and Deposit case, likewise, did not involve the problem of probation or suspension of sentence. Neither case is decisive of the question before us.

As heretofore noted, in the present case it is not shown by the record that the bail was present in court at the time of sentence or that any demand or request was then made that the bail be exonerated. The defendant did not thereafter appear and the judgment was still in force and unsatisfied.

In view of what we have here said, it is not necessary to pass upon other points raised.

Judgment reversed.

Griffin, Acting P. J., concurred.

A petition for a rehearing was denied October 23, 1950, and respondent's petition for a hearing by the Supreme Court was denied November 20, 1950.